BANDEL v. DEPARTMENT OF HEALTH OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.    June 12, 1908.)

PHYSICIANS AND SURGEONS—OSTEOPATHS—REGISTRATION—"PRACTITIONER OF MEDICINE."

Under Laws 1907, p. 636, c. 344, defining a practitioner of medicine to be one holding himself out as able to and who offers to diagnose, etc., any human disease, etc., regulating osteopathy and defining a physician to be a practitioner of medicine, and under Sanitary Code of New York City defining the word "physician" as including one practicing about the cure of the sick, etc., osteopaths are physicians and practice medicine, and except for the restrictions of chapter 344 prohibiting them from administering drugs, etc., they are entitled to all the rights and subject to all the penalties of other physicians and medical practitioners, and hence a regularly practicing osteopath can require the department of health of such city to register him in the list of physicians of the city, and to accept from him death certificates the same as they do from physicians who are not osteopaths; that an osteopath's degree is O. D., instead of M. D., not affecting his right to register and grant death certificates.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5374–5376; vol. 8, p. 7754; vol. 6, p. 5491.]

Appeal from Special Term, Kings County.

Application by Charles F. Bandel for mandamus to the department of health of the city of New York.    From an order for relator, respondent appeals.    Affirmed.

The following is the opinion of Dickey, J., at Special Term:

Charles F. Bandel, a regularly licensed and practicing osteopath, applies for a peremptory writ or mandamus directed to the department of health of the city of New York, requiring said department to register him in the list of physicians of the city of New York and to accept from him death certificates the same as they do from physicians who are not osteopaths.    The department has refused to so register him under the claim that he is not a physician, and does not practice medicine.

Before any recognition by statute was given to the practitioners of osteopathy, section 153 of the public health law had a provision making it a misdemeanor for any one to "practice medicine" without license and lawful registration, and one E. Burton Allcutt was prosecuted and convicted under this act.    Laws 1893, p. 1547, c. 61.    On his appeal it was held (117 App. Div. 546, 102 N. Y. Supp. 678), that one not licensed to practice medicine who advertises himself as a doctor practicing nechano neural therapy who takes patients, makes diagnoses, and prescribes diet and conduct, and who asserts the power to "cure all diseases that any physician can cure without drugs, and also diseases that they cannot cure with drugs," and takes payment for consultation and treatment, was properly convicted of a violation of the statute, although he administered no medicine nor used surgical instruments.    So it seems that "the practice of medicine" does not consist in merely administering drugs or the use of surgical instruments; the court saying: "The day has passed when it is thought that a physician's advice was of no use unless he ordered a dose of medicine."    By chapter 344, p. 636, Laws 1907, what was meant by practitioners of medicine was clearly defined in these words:    "A person practices medicine within the meaning of this act except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake by any means or method to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition."    By this same act osteopathy is recognized, and its practice is regulated with the provision for the admission to practice of those qualified.    In my opinion the lawmak-

ers intended to and do make osteopaths practitioners of medicine and also make them physicians because subdivision 8 of section 1 of this act says that a physician means a practitioner of medicine. It is claimed that the practice of osteopathy first began in the state of Missouri. By the statutes of that state (Rev. St. Mo. 1899, p. 1993, c. 128 [Am. St. 1906, p. 3994]), it is specifically provided that osteopathy is not the practice of medicine. It was in the power of our Legislature to make a similar provision, but they did not do so, but, on the contrary, they defined the practice of medicine so that it must be interpreted to include the work done by osteopaths in the practice of their profession. The Sanitary Code of this city provides that the word "physician" shall include every person who practices about the cure of the sick and injured or who has charge of any person sick, injured, or diseased, etc.

So it is clear to my mind that osteopaths are physicians and practice medicine, and, except for the restrictions put on them by chapter 344. p. 636, Laws 1907, prohibiting them from administering drugs, and performing surgery with use of instruments, they are entitled to all the rights and subject to all the penalties of other physicians and medical practitioners. The fact that their degree is O. D. instead of M. D. makes no difference so far as their right to register and grant death certificates is concerned. The study required of them before their admission is of such a general and extensive character as to fully fit them to certify as to cause of death of a patient.

Mandamus asked for granted, with $50 costs.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

James D. Bell, for appellant.

Martin W. Littleton (Frederick Allis, on the brief), for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of Mr. Justice Dickey at Special Term.

---

NEW YORK DOCK CO. v. INDIA WHARF BREWING CO.

(Supreme Court, Appellate Division, Second Department. June 12, 1908.)

1. WHARVES—"WHARFAGE"—DEFINITION.

Wharfage is a charge against a vessel for lying at a wharf, and not a charge for caring for the goods.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Wharves, §§ 13–18.

For other definitions, see Words and Phrases, vol. 8, pp. 7435–7436, 7835.]

2. SAME—EASEMENT OVER WHARF—DEEDS—CONSTRUCTION.

A company organized for the purpose of carrying on the business of wharfage, etc., including the owning and maintaining of docks, conveyed certain lots subject to a right of way in the grantees over the street between the lots and the outside line of the dock. Thereafter the company improved the property by constructing a basin and various wharves, one of which was built in the street referred to in the deed. The parties evidently expected that the lots would be improved by the erection thereon of stores or warehouses, and the deeds declaring that the owners thereof, when erected, should have the right to lay down railways from each of the pier lots to the outside line of the pier so as to admit carriages to pass over them, and so as not to obstruct the passageway. The grantor reserved the right to all dockage as well as the entire control, interest, and income of all the piers, docks, etc. The grantor's successors contended that what was granted was an irrevocable license to come on the dock to do business with the dock company on paying a reasonable compensation. *Held*, that the grantee and his successors acquired by the deed the right to use the right of way over the wharf without payment of toll, and to remove without charge by means of trucks drawn over the